Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

District of South Carolina [▼]

Charleston Division

|  |  |  |
|---|---|---|
| | ) | Case No. __2:25-cv-861-BHH-MGB__ |
| __JERMAINE BILLIE__ | ) | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* [✔]Yes [ ]No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| | ) | |
| __CREDENCE RESOURCE MANAGEMENT, LLC__ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | ) | |

*(stamp: 2025 FEB 14  PM 1:52  CLERK, CHARLESTON, SC)*

## COMPLAINT FOR A CIVIL CASE

I.   **The Parties to This Complaint**

  A.   **The Plaintiff(s)**

  Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | JERMAINE BILLIE |
| Street Address | 355 BRADLEY BEND DR |
| City and County | MONCKS CORNER/BERKELEY |
| State and Zip Code | SOUTH CAROLINA/29461 |
| Telephone Number | (843) 934-3711 |
| E-mail Address | VONTAE0307@GMAIL.COM |

  B.   **The Defendant(s)**

  Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**Defendant No. 1**

    Name

    CREDENCE RESOURCE MANAGEMENT, LLC

    Job or Title *(if known)*

    Street Address

    4222 TRINITY MILLS RD SUITE 260

    City and County

    DALLAS/DALLAS

    State and Zip Code

    TEXAS/

    Telephone Number

    1-855-880-4792

    E-mail Address *(if known)*

    complaints@credencerm.com

**Defendant No. 2**

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

**Defendant No. 3**

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

**Defendant No. 4**

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 USC § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

    ☑ Federal question        ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.     If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

U.S. CODES: 15 U.S.C. 1681; 15 U.S.C. 1692; AND 47 U.S.C. 227

### B.     If the Basis for Jurisdiction Is Diversity of Citizenship

1.     The Plaintiff(s)

    a.     If the plaintiff is an individual

        The plaintiff, *(name)* JERMAINE BILLIE , is a citizen of the State of *(name)* SOUTH CAROLINA .

    b.     If the plaintiff is a corporation

        The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.     The Defendant(s)

    a.     If the defendant is an individual

        The defendant, *(name)* _____, is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

    b.    If the defendant is a corporation

The defendant, *(name)* CREDENCE RESOURCE MANAGEMEN , is incorporated under the laws of the State of *(name)* NEVADA , and has its principal place of business in the State of *(name)* TEXAS .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

1. EXCEEDS $75,000
2. STAUATORY DAMAGES
3. ACTUAL DAMAGES
4. PUNITIVE DAMAGES

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

-DEFENDANT VIOLATED PLAINTIFF'S PRIVACY RIGHTS
-DEFENDANT VIOLATED PLAINTIFF'S RIGHTS UNDER 15 U.S.C. 1681 ET SEQ
-DEFENDANT VIOLATED PLAINTIFF'S RIGHTS UNDER 15 U.S.C. 1692 ET SEQ
-DEFENDANT VIOLATED PLAINTIFF'S RIGHT UNDER 47 U.S.C. 227 ET SEQ
-DEFENDANT ACTIONS HAS CAUSED PLAINTIFF EMOTIONAL DISTRESS
-DEFENDANT VIOLATED PLAINTIFF'S RIGHTS UNDER SOUTH CAROLINA CONSUMER PROTECTION CODE TITLE 37 ET SEQ

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

PLAINTIFF IS PRAYING FOR RELIEF FOR STATUTORY, ACTUAL, AND PUNITIVE DAMAGES FOR DEFENDANT'S WILLFUL AND NEGLIGENCE NONCOMPLIANCE:

EXCESS OF $75,000 NOT TO EXCEED $150,000 FOR ACTUAL DAMAGES
AMOUNT FOR PUNITIVE DAMAGES NOT TO EXCEED $750,000

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     _____

Signature of Plaintiff     _____
Printed Name of Plaintiff     _____

### B.     For Attorneys

Date of signing:     _____

Signature of Attorney     _____
Printed Name of Attorney     _____
Bar Number     _____
Name of Law Firm     _____
Street Address     _____
State and Zip Code     _____
Telephone Number     _____
E-mail Address     _____

Jermaine Billie
355 Bradley Bend Dr.
Moncks Corner, SC 29461
Phone: (843) 934-3711
Email: Vontae0307@gmail.com

RECEIVED USDC
CLERK, CHARLESTON, SC

2025 FEB 14  PM 1: 53

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| **JERMAINE BILLIE**<br><br>**PLAINTIFF,**<br><br>v.<br><br>**CREDENCE RESOURCE MANAGEMENT, LLC**<br><br>**DEFENDANT.** | **CASE NO:** _____<br><br>**COMPLAINT**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF:**<br><br>**(1)** THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692, ET SEQ; AND<br><br>**(2)** THE FAIR CREDIT REPORTING ACT (15 USC 1681, ET SEQ; AND<br><br>**(3)** TELEPHONE CONSUMER PROTECTION ACT (TCPA) 47 U.S.C. § 227, ET SEQ<br><br>**(4)** SOUTH CAROLINA CODE OF LAWS 37, ET SEQ<br><br>**DECLARATION OF VENUE**<br>**JURY TRIAL REQUESTED** |

## INTRODUCTION

1.  Plaintiff, Jermaine Billie (hereinafter Plaintiff), *Pro se,* brings this lawsuit against Credence Resource Management, LLC (hereinafter "Defendant") for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), the Fair Debt Collection Practice Act (hereinafter "FDCPA"), 12 CFR Part 1006 (Reg F), Telephone Consumer Protection Act (hereinafter "TCPA"), and South Carolina Code of Laws Title 37- Consumer Protection Codes ( hereinafter "SCCPC").

2.  The Plaintiff states that this legal action was unavoidable due to the Defendant's refusal to negotiate or accept any pre-litigation settlement offers. He concludes that resorting to utilizing  the court resources and system is now necessary to resolve the matter.

3.  By information and beliefs, Plaintiff asserts that the actions and inactions of the Defendant could be a class action pursuant to **Rule 23 of the Federal Rules of Civil Procedure.**

4.  A "class action lawsuit for violators of the "FCRA" refers to a legal action where a group of individuals, considered a "class," sue violators for violating the FCRA which would allow each class member to recover damages for each violation, which can amount to significant financial penalties for the company

involved. FCRA class actions quickly become "bet-the-company" lawsuits.

5.  Plaintiff is be willing to be the face of a "class action lawsuit for violators of the "FCRA" that refers to a legal action where a group of individuals, considered a "class," sue the Defendant, Credence Resource Management, LLC  for violating the Fair Credit Reporting Act (FCRA). This would allow each class member to recover damages for each violation, which can amount to significant financial penalties for the company involved.

6.  Plaintiff brings this action to seek actual damages, statutory damages, punitive damages, attorney fees (if applicable) and costs, and any other relief the court deems appropriate.

7.  The Plaintiff asserts that the information presented in the complaint is specific, accurate, and free of mischaracterization, vagueness, generalization, or unsupported allegations. He states that the Defendant has knowledge of the information because it stems from disputes the Plaintiff submitted, either directly to the Defendant or indirectly through their legal counsel.

8.  The Plaintiff emphasizes the purpose of the Fair Debt Collection Practices Act (hereinafter FDCPA), which is to protect consumers like himself from abusive debt collection practices as described in the complaint. He quotes 15 U.S.C. § 1692(a), highlighting the legislative findings regarding the prevalence of abusive, deceptive, and unfair debt collection practices and their detrimental effects on individuals, including contributing to

bankruptcies, marital problems, job loss, and invasions of privacy.

9.  The Plaintiff is informed and believes that the Defendant is a "furnisher of information", who furnishes information to a consumer reporting agency as described in the FCRA, Section 603(f) and (p).

10. The FDCPA protects consumers from abusive debt collection practices by regulating the conduct of debt collections. See *Crawford v. LVNV Funding, LLC, 758 F3d 1254, 1257 (11th Cir. 2014)* (noting that "Congress passed the FDCPA in 1977 to stop the use of abusive, deceptive, and unfair debt collection practice by many debt collector" (internal quotation marks omitted)). To enforce its provisions, the FDCPA provides consumers with a private right of action against debt collectors who violate the Act. *Id.* at 1258.

11. The 11th Circuit applies the "least-sophisticated consumer" standard. *See LeBlanc v. Unifund CCR Partners, 601 F 3d. 1185, 1193, 1201 (11th Cir. 2010)* (explaining that the least-sophisticated consumer standard applies to determine if a debt collector has violated § § 1692e or 1692f of the FDCPA.

12. The "least-sophisticated consumer standard" is intended to protect "all consumers, the gullible as well as the shrewd." *Id.* at 1194 (internal quotation marks omitted).

13. *Furthermore, the "Ninth Circuit" does recognize the "least sophisticated consumer" standard, often applying it in cases*

*related to consumer protection, particularly when evaluating whether advertising or debt collection practices could mislead a consumer with a basic level of understanding; however, the court has also indicated that this standard should not be interpreted as overly lenient, and will consider a "reasonable consumer" perspective as well depending on the circumstances.*

## PARTIES

14.  Plaintiff is a citizen of the State of South Carolina who resides in the County of Berkeley.

15.  Plaintiff is a consumer as defined by 15 U.S.C. Section 1692(a)(3) of the FDCPA, 15 U.S.C. Section 1681a(3) of the FCRA, and SCCPC Title 37-1-301, in that the alleged debt that the Defendant was attempting to collect from the Plaintiff is a consumer debt.

16.  Plaintiff is informed and believes that the Defendant is a debt collector as defined by the FDCPA Section 803(6); and SCCPC 37-1-301(28).

17.  Plaintiff is informed and believes that the Defendant's principal address is 4222 Trinity Mills Rd STE 260 Dallas, TX 75287.

18.  Plaintiff is informed and believes that the Defendant is registered in the State of South Carolina to receive service at 508 Meeting Street, West Columbia, SC 29169.

19.  Plaintiff is informed and believes, and thereupon alleges, that Defendant uses an instrumentality of interstate commerce or the

mails in a business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is therefore a debt collector as that phrase is defined by 15 U.S.C. section 1692a(6), and South Carolina Consumer Protection Code (hereinafter SCCPC 37-1-301(28).

## JURISDICTION AND VENUE

20. The claims asserted in this complaint arise under 15 U. S. C. §§1681e, 1681i, and 1681s-2(b) of the FCRA; 15 U.S.C. 1692, *et seq*, and 47 U.S.C. 227, *et seq*. This Court has jurisdiction over the subject matter of this action under 28 U. S. C. §1331 and 15 U. S. C. §1681p.

21. This Court has jurisdiction over Plaintiff's claims as they are within the Court's jurisdictional limits.

22. Venue is proper pursuant to 28 U. S. C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

23. Plaintiff Jermaine Billie ('Plaintiff''), hereby submits his Complaint and Demand for Jury Trial Jury Trial ("Complaint"), by and through undersigned counsel (If applicable) against Defendant, Credence Resource Management, LLC, alleging violations of the FCRA, the FDCPA, TCPA, and SCCPC.

24. Defendants transact business in this District; Defendants purposefully avail themselves of the protections of this District; and Defendants regularly direct business at this District, such that personal jurisdiction is established.

## STATEMENT

25. Congress enacted the FDCPA upon finding that debt collection abuse by debt collectors was a widespread and serious problem. *See S. Rep. No. 95-382, at 2 (1977) reprinted in U.S.C.C.A.N. 1695, 1691; 15 U. S. Code § 1692(a)*.

26. States can also adopt and mirror the FDCPA and enforce state laws upon debt collector's collection or attempt to collect within the state. This means that debt collectors operating in South Carolina must comply with both the federal FDCPA and the relevant provisions of South Carolina state law, such as 37-5-108.

27. The Defendant is barred under the Fair Debt Collection Practices Act, hereinafter called the *FDCPA, Section 807(2), 15 U. S. C. § 1692e(2)*.

28. An FDCPA claim "has nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of collecting the debt. It does not arise out of the transaction creating the debt[.]" See Azar v. Hayter, 874 F.Supp. 1314, 1318 (N.D.Fla.1995)

## STATEMENT OF FACTS

29. On or around 02/17/2024, Plaintiff received a credit alert from several credit monitoring companies, including MyFICO.com, informing him that his FICO scores dropped 77 points on his Experian FICO score and 78 TransUnion reports. **SEE "EXHIBIT A" in its entirety as Evidence.**

30. Upon reading the reason for his scores dropping 78 points, Plaintiff learned that a 'new' collection was added to his credit reports for the amount of $317.00. **"SEE EXHIBIT A" as Evidence.**

31. The Plaintiff initially believed the collection activity might be related to a pending insurance claim with the Veterans Affairs (VA) for a recent hospital visit. However, after reviewing his credit report from Annualcreditreport.com, he discovered the collection was actually for an alleged unpaid bill from AT&T U-VERSE (Non-party).

32. The Plaintiff asserts that the discovery of his FICO score decreased from the 790s to the low 700s, after having worked diligently for years to raise it from below 500.

33. The Plaintiff "payment history" for credit scoring was in the "Exceptional" category. Understandably, this unfairness made the Plaintiff extremely angry and frustrated.

34. The Plaintiff argues that while debt collection and credit reporting may be routine tasks for the Defendant, these actions

have had significant impact on his creditworthiness and privacy, without due process.

35.    The Plaintiff checked his AT&T account online and confirmed that it was active, in good standing, and that he was still receiving internet and phone service. His payments were also on autopay.

36.    The Plaintiff then realized he had never received any notification from either the Defendant or AT&T regarding the alleged unpaid debt. He confirms he received no written communication from AT&T about the debt, its assignment to a third-party debt collector, or the identity of that collector.

37.    Plaintiff contends that under the Section 615 of the FCRA, the Defendant, who was in fact a "user" of a consumer report prior to becoming a "furnisher of information" that furnished the collection on his credit report had a duty to notify him of any "adverse action prior to" placing the "information" on his credit reports. Permissible purpose is extended to any person or entity who has a legitimate need for access to review a consumer report.

38.    The Plaintiff admits that he did in fact have additional accounts under his primary account, which were considered as sub-accounts, in his contractual agreement with AT&T. Nevertheless, Plaintiff was the "primary" of all accounts and should have been notified by AT&T of any such delinquencies, to include sub-accounts.

39. This situation could have been prevented had AT&T (Non-Party) honored the contract between themselves and the Plaintiff, by notifying him of any delinquencies on the account, whether primary or sub-account, "prior" to placing the account into collections or to an attorney.

40. In short, the plaintiff is arguing that AT&T's failure to notify him of the delinquency, as required by their contract, directly led to the "unfair" debt collection efforts by the Defendant, and the resulting harm.

41. However, the Defendant, a debt collector, failed to ensure the accuracy of the debt that it was attempting to collect. To include, but not limited to, the accurate personal information, the amount of debt, and the reason for the debt (validity of debt) was accurate and lawful. This was the purpose of the Defendant having "permissible purpose", which the Plaintiff's personal information could have easily been confirmed.

## CAUSES OF ACTION

42. The Defendant failed to provide the Plaintiff with the required "initial communication" or any communication whatsoever about the alleged debt *before or after* placing the collection account information on his credit reports with TransUnion and Experian (Non-Parties).

43. Although the FDCPA does not provide a definition for the term "initial communication."

The term "initial communication" is defined in 12 CFR 1006.34(b)(2) as follows: means *the first time that, in connection with the collection of a debt, a debt collector conveys information, directly or indirectly, regarding the debt to the consumer, other than a communication in the form of a formal pleading in a civil action, or any form or notice that does not relate to the collection of the debt and is expressly required by:*

(i) The Internal Revenue Code of 1986 (26 U.S.C. 1 *et seq.*);

(ii) Title V of the Gramm-Leach-Bliley Act (15 U.S.C. 6801 through 6827); or

(iii) Any provision of Federal or State law or regulation mandating notice of a data security breach or privacy risk.

44. In compliance with the *FDCPA 809(a), Notice of debt; contents* Within five days after the "initial communication" with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

*(1) the amount of the debt;*

*(2) the name of the creditor to whom the debt is owed;*

*(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any*

*portion thereof, the debt will be assumed to be valid by the debt collector;*

*(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such 15 USC 1692g 12 § 809 15 USC 1692g verification or judgment will be mailed to the consumer by the debt collector; and*

*(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.*

45.    Defendant failed to comply with the Validation of Debt procedures of the *FDCPA 809(a)(1-5) and 12 CFR Part 1006*, by not providing the required notice of debt contents to the Plaintiff within five (5) days of reporting the collection accounts on two of the Plaintiff's consumer reports.

46.    The failure of the Defendant to provide Plaintiff with the debt validation notice "required" under the FDCPA. The Plaintiff was denied his rights to dispute the alleged debt or any portion thereof, or request for verification of debt.

47.    Although the Plaintiff did not agree with the collection being placed on his Experian and TransUnion reports. His FDCPA claim pertains to the methods the Defendant engaged in to

collect the alleged debt.  See *Azar v. Hayter, 874 F. Supp. 1314 (N.D. Fla. 1995)*

48. On or around 02/29/2024, Plaintiff disputed the debt through the Defendant's Registered Agent in the State of South Carolina (Attn: Legal Dept). In compliance with Section 805(b) of the FDCPA, the Plaintiff may communicate with the "attorney of the debt collector."

49. The written communication mailed to the Defendant's Registered Agent was to inform the Defendant's counsel of his dispute of the invalid collection being placed on his credit reports without any prior knowledge of any such alleged debt by their client (Defendant). In his written dispute, the Plaintiff allowed Defendants ten (10) days from date of receipt to remove the collection from his credit reports. **SEE "EXHIBIT B" in its entirety as Evidence.**

50. On or around March 22, 2024, the Plaintiff received a letter dated March 13, 2024, from Attorney Allison L. Cannizaro. This letter serves as confirmation that the Defendant, Credence Resource Management, LLC was aware of the Plaintiff's dispute concerning debt collection activities and the alleged inaccurate reporting of this debt to credit bureaus.

51. Attorney Cannizaro, representing the law firm Sessions, Israel & Shartel, informed the Plaintiff that she was representing the Defendant, Credence Resource Management, LLC. The letter stated that the Defendant would have 14 days to investigate the

matter. However, the Plaintiff believed that 10 days would be a sufficient amount of time to determine whether her client was in compliance with the Fair Debt Collection Practices Act (FDCPA) and the Fair Credit Reporting Act (FCRA).

52. The counsel's communication did not contain the debt validation notice, as required under the FDCPA, even though the Plaintiff clearly stated this in his complaint.

53. According to the time that the Defendant's counsel received the notice and responded, five (5) days surpassed. Therefore, the counsel's communication should have contained the debt validation notice.

54. The counsel's communication also failed to provide the required statement "This communication is from a debt collector. This is an attempt to collect a debt...." (Remaining portion Omitted). By representing their client, Sessions, Israel & Shartel law firm, under the FDCPA was required to notify the Plaintiff of his rights, but failed to do so.

55. On March 28, 2024, the Plaintiff emailed the Defendant's legal counsel, using the address provided by her, to express his disagreement with the 14-day timeframe for investigation. He argued that the Defendant had not afforded him 14 days to dispute the alleged debt before reporting it to credit bureaus without prior notification. **SEE "EXHIBIT C" in its entirety as Evidence.**

56. The Plaintiff's email also served as an attempt by the Plaintiff to resolve the issue through the Defendant's legal counsel. He outlined the alleged violations, including incorrect reporting to credit bureaus, invasion of privacy, damage to his credit reputation, and violations of the FDCPA and FCRA. He proposed a settlement amount to compensate for these violations. However, the Defendant's legal counsel denied all allegations and denied any settlement offer presented by the Plaintiff.

57. The Plaintiff explained to the Defendant's counsel his rationale for the requested amount, emphasizing that his right to privacy had been violated. He asserted that there is no quantifiable monetary value that can adequately compensate for such a violation of his privacy.

58. On 29 March 2024, Plaintiff received correspondence from Attorney Cannizaro of Sessions, Israel, & Shartel Law Firm, addressing each issue submitted by Plaintiff.

59. The Plaintiff was initially told that a 14-day investigation period was necessary. However, only one day later, Attorney Cannizaro informed the Plaintiff via email that her client was not at fault and had not violated any laws. The Plaintiff contends this assertion is partially true and partially false.

60. The Plaintiff acknowledges his understanding of Section 623(a)(8) of the Fair Credit Reporting Act (FCRA), which allows him to dispute information directly with the furnisher (the Defendant). He also understands that Section 623, paragraph (a) of the FCRA does not provide a private right of action. He recognizes that to establish a private right of action against the Defendant under the FCRA, his disputes would need to have been submitted to a consumer reporting agency. Only then could the Defendant potentially be held liable under Section 623(b) of the FCRA.

61. However, the Plaintiff did in fact, disputed the collection account furnished by the Defendant through a consumer reporting agency, but only after determining that his attempt to resolve the issue with the Defendant was futile.

62. Nevertheless, the Plaintiff "first" disputed with the Defendant's attorney, which meant that the Defendant, as a furnisher of information under the FCRA. Had a duty to notify the consumer reporting agencies of such a dispute received by the Plaintiff. However the Defendant did not notify the consumer reporting agency, nor was his credit report updated to "consumer disputes".

63. The Plaintiff's consumer report was "updated" upon the consumer reporting agencies receiving his notice of dispute. Upon receiving the Plaintiff's dispute, the subject collection was inaccurate/unverifiable and deleted. Which solidified his argument with the Defendant's counsel.

64. The Plaintiff emphasizes that debt collectors are "not required" to furnish information to credit reporting agencies to legally collect a debt. He asserts that this process is governed by the Fair Debt Collection Practices Act (FDCPA), not the Fair Credit Reporting Act (FCRA).

65. The Plaintiff argues that since there were no requirements or obligations for the Defendant, a debt collector, to report or furnish this subject alleged debt to any consumer reporting agency in order to legally pursue collection. Then the Defendant's action of placing the collection on two of his credit reports should be considered as "malicious" and designed to harm his credit capacity, creditworthiness, credit standing, and reputation. Through information and belief, the Plaintiff belivesIf not required, then what other purpose would the Defendant place the collection on the Plaintiff's report is what should be taken into consideration.

66. Regarding the debt validation notice, Attorney Cannizaro provided the Plaintiff, via email with the following information: *"The letter was sent to 6898 A C Skinner PKWY Unit 227, Jacksonville FL 32256, but was returned as undelivered." SEE "EXHIBIT D (# 3)" as Evidence.*

67. Plaintiff cites *Johnson v. Midland Credit Management Incorporated*, Case No. 1:05 CV 1094 (N.D. Ohio Aug. 23, 2006)

68. In the case of Johnson v. Midland Credit Management Incorporated, the Plaintiff brought to the attorney's attention a

discrepancy regarding the address on a returned notice. The notice listed an address in Florida, while the Plaintiff's actual residence was in South Carolina. The Plaintiff clarified that he was not a resident of Florida.

69. Plaintiff also cites _Donohue v. Nielson, 161 Wn. App. 606, 255 P.3d 760, 161 Wash. App. 606 (Wash. Ct. App. 2011)_

70. In the case of Donohue v. Nielsen, the Defendant Nielsen did NOT receive an "undeliverable" notice from the USPS, thus the claims made by the Donohue, the Plaintiff were dismissed.

71. However, the Defendant in this complaint, did in fact receive an "undeliverable" notice, which should have triggered the Defendant to utilize its "permissible purpose" to review Plaintiff's credit report for a recent address.

72. Dependent upon the "Assignment Agreement" between the Defendant and AT&T. If the Defendant was notified that the mail containing debt validation was "undeliverable", then the Defendant was to return the debt to AT & T as uncollectible.

73. If the "Assignment Agreement" did not state for the Defendant to take it upon itself to send a text message, as only AT&T had consent from the Plaintiff to send text messages. Then the Defendant breached the contractual agreement between itself and AT&T, rendering the collection of the alleged as "invalid." Therefore, making the furnishing of this information to any consumer reporting agency a violation of the Plaintiff's rights under the FCRA.

74.    In accordance with 12 CFR 1006.6(b)(4)(i)(2), *"without the prior consent of a consumer given directly to a debt collector. A debt collector, such as Defendant, cannot rely on the consent given to the creditor."*

75.    The returned, undelivered debt validation notice supports the Plaintiff's claim that he was not properly notified of the alleged debt. This lack of notification also suggests a failure to provide him with the legally required information regarding his right to dispute the debt's validity, a right guaranteed by the Fair Debt Collection Practices Act (FDCPA).

76.    Plaintiff asserts that the Defendant failed to verify the Plaintiff's address prior to mailing the debt validation notice. Proper address verification protects consumers from being pursued for debts they don't owe or from having their credit reports negatively affected due to mistaken identity or outdated information.

77.    Through information and beliefs, the Defendant failed to have reasonable procedures in place to ensure accurate personal information, which could lead to further errors and harm to consumers.

78.    This failure should be considered as evidence of negligence on the part of the Defendant.

79.    Instead of acknowledging the Defendant's potential violation and  enter into an agreement of some sort of settlement with the Plaintiff. The legal counsel for Credence Resource Management,

LLC, the Defendant, asserted to the Plaintiff in the email correspondence that there is no mandatory waiting period for a debt collector to report information to a credit reporting agency. She cited the case *Gause v. Medical Business Consultants, Inc., 424 F. Supp. 3d 1175, 1204 (M.D. Fla. 2019)* as support for this claim. **SEE "EXHIBIT D in its entirety as evidence"**

80.    The Plaintiff argues that the *Gause* case cited by the Defendant's counsel is inapplicable to his situation. In *Gause*, the plaintiff *did* receive the debt validation notice. The Plaintiff in this case emphasizes that *he* did *not* receive such a notice. Therefore, he contends that the *Gause* case, rather than supporting the Defendant's position, actually bolsters his own argument by highlighting the crucial difference in their circumstances: the presence of a debt validation notice in *Gause* versus its absence in his own case. He suggests this discrepancy underscores the Defendant's failure to properly notify him of the debt and his rights.

81.    The Plaintiff argues that debt validation is essential to establish the "validity" of a debt, which is a prerequisite for a debt collector to legally pursue collection activities. He cites Section 809(a)(3) of the FDCPA, which states that the debt collector must include a statement informing the consumer that unless the debt's validity is disputed within 30 days of receiving the notice, the debt will be assumed valid by the collector. He

implies that without proper validation, the debt collector's pursuit of collection could be considered unlawful.

82. According to the Black's Law Dictionary, the term **"validity"** is defined as *"legal sufficiency, or something that is legally binding and <u>compliant with regulations</u>."* However, the Defendant's action or inactions were not in compliance with the FDCPA nor the FCRA.

83. The Plaintiff asserts the following as a keypoint: If the debt validation notice to a consumer states that the debt collector will "assume" the debt is valid if it's not disputed "within 30 days of receipt." How can the debt collector legally furnish information to credit reporting agencies *before* that 30-day period expires prior to the debt being "assumed" as valid? He argues that credit reporting requires *verification, accuracy, and completeness*, not mere *assumptions*. Therefore, the Plaintiff suggests that reporting the debt before the 30-day dispute window closes could be a violation of the FDCPA as well as the FCRA.

84. The Plaintiff asserts that courts should acknowledge that debt collectors do not typically inform consumers that a validated debt (not to be construed as verified debt) will be reported to a credit reporting agency, as required under the FCRA.

85. The FCRA as well as the FDCPA is in a language that speaks for themselves. It consists of "procedures" that "persons," whether a consumer reporting agency, user, furnisher, or consumer are to

be in compliance with. Any noncompliance of procedures would be considered as a violation of such statute. Just as the Court has "procedures", the FCRA and FDCPA also have procedures. These procedures, if not followed or adhered to, can have unfavorable consequences.

86.   The debt validation notice only pertains to the attempt of a debt collector to collect a debt allegedly owed by a consumer.

87.   The debt validation notice in question does not inform or notify the consumer that the debt information will be furnished or reported to any credit reporting agency.

88.   The Plaintiff raises a key question about the process of credit reporting. He points out that all other accounts on his credit reports originated from agreements with creditors where the "terms and conditions explicitly" stated that information would be furnished to credit reporting agencies. He agreed to this reporting by signing the agreements. He then asks how a debt collector can furnish information to credit reporting agencies *without* any prior notification or agreement with the consumer, as was the case with the debt in question. This highlights the discrepancy between standard creditor reporting practices and the debt collector's actions in his case.

89.   The Plaintiff argues that the Defendant qualifies as a "furnisher of information" under the Fair Credit Reporting Act (FCRA). While the FCRA itself doesn't explicitly define "furnisher," the Plaintiff points to 12 CFR 1022.41(c) (Regulation V, which

implements aspects of the FCRA) for a definition. That section states that a **"furnisher"** is "*an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.*" The Plaintiff's argument rests on the assertion that the Defendant, by providing information about the alleged debt to credit reporting agencies, fits this definition.

90. The Plaintiff argues that, as a furnisher of information under the FCRA, the Defendant was required by Section 623(a)(7)(A) to provide written notice to the consumer *before* furnishing negative information to a credit reporting agency. He emphasizes that this requirement applies to furnishers of information to consumer reporting agencies as defined in Section 603(p) of the FCRA.

91. The term Negative Information is defined in the FCRA Section 623(a)(7)(G):

*(i) The term "negative information" means information concerning a customer's delinquencies, late payments, insolvency, or any form of default*

92. The Plaintiff contends that simply "validating" a debt is insufficient justification for reporting it on a consumer's credit report. He argues that there is no section within the Fair Credit Reporting Act (FCRA) that explicitly authorizes debt collectors to report collection account information to consumer reporting agencies as defined in Section 603(p) of the FCRA.

93. The Plaintiff argues that while debt collectors often cite "permissible purpose" as justification for furnishing information to credit reporting agencies. The Fair Credit Reporting Act (FCRA), specifically Section 604, only authorizes *consumer reporting agencies to furnish* a consumer report to entities with a permissible purpose. He is highlighting a distinction between a debt collector furnishing information *to* a credit reporting agency, and a credit reporting agency furnishing a report *to* a third party.

94. According to Black's Law Dictionary, the term "**furnish**" means to supply; provide; provide for use. This definition emphasizes the act of providing something to someone else. It does not include the act of receiving something.

95. *§ 604. Permissible purposes of consumer reports [15 U.S.C. § 1681b]* **(a)** *In general. Subject to subsection (c), any consumer reporting agency may furnish a consumer report under the following circumstances and no other:*

96. Therefore, permissible purpose allows an entity to "review" a credit report, usually and primarily, to make credit based decisions. Permissible purpose does not allow a user or furnisher to furnish information to a consumer reporting agency. Plaintiff would like to reemphasize that the FCRA is in plain English, and speaks for itself.

97. In response to the Plaintiff's disputes, the Attorney also informed the Plaintiff that her client did provide the validation

of debt notice to his phone number. Her response via email was as follows:

*"The text message was sent to 678-790-XXXX (last 4 omitted), which is the number that was provided by AT&T. There was also an opt-out message included in the text message."* **SEE EXHIBIT D in its entirety as Evidence.**

98. The Plaintiff stated to the Defendant's counsel that the phone number used was not his, therefore he did not receive the validation notice as required by Section 809 of the FDCPA.

99. The Plaintiff argues that the Defendant's counsel stated in her email correspondence that the text was sent on 01/25/2024. Also based on the email correspondence from the Defendant's counsel, the collection account was reported to Experian and TransUnion on 02/17/2024, which was only 23 days after allegedly sending the text message to the improper telephone number.

100. The Plaintiff argues that although he never received the debt validation text. According to the information provided by the Defendant's counsel, his disputes were within 30 days of that date. Which would mean that the Defendant had a duty to provide both debt validation notice, as well a "verification of debt."

101. However, the initial response from the counsel upon receiving the complaint from the Plaintiff, did not contain either of the two, but merely to inform the Plaintiff that she needs 14 days to investigate.

102. The Plaintiff further alleges that according to the information provided by the Defendant's counsel. The Defendant violated Section 805(b) of the FDCPA by communicating about the debt with a party not authorized under that section when the Defendant did in fact, send the debt validation notice to a number not assigned or used by the Plaintiff. The debt validation notice was sent to a phone number that was not assigned to or used by the Plaintiff. This was confirmed by Defendant's own counsel.

103. He emphasizes that he was unaware of the alleged debt before it appeared on his credit reports and, therefore, could not have given such consent to receive any text or email from the Defendant.

104. In the case of *Johnson v. Midland Credit Management Incorporated*, the Plaintiff raises an additional point regarding text messages. Citing 12 CFR 1006.6(b)(4)(2). The Plaintiff emphasizes that debt collectors are prohibited from sending texts to debtors or consumers without their prior consent. The Plaintiff asserts that he did not provide such consent to the Defendant, as he was not even aware of any collection activity being conducted by the Defendant.

105. The Plaintiff argues that providing his personal information via text message to a phone number not assigned to him constitutes a violation of the Telephone Consumer Protection Act (TCPA).

106. The Plaintiff in *Johnson v. Midland Credit Management Incorporated* is arguing that the Defendant violated the Telephone Consumer Protection Act (TCPA) by sending him text messages without his prior consent. The TCPA is a federal law that protects consumers from unwanted telemarketing calls and text messages.

107. The Plaintiff is arguing that he did not give the Defendant consent to send him text messages because he was not aware of any collection activity by the Defendant. The Plaintiff is also arguing that the Defendant violated the TCPA by sending a text message containing his personal information, to a number not assigned or used by him.

108. The Plaintiff is emphasizing the purpose and intent of the TCPA, which is to protect consumers from unwanted telemarketing calls and text messages. The Plaintiff is arguing that the Defendant's actions in this case violate the TCPA and that he is entitled to damages.

109. The Plaintiff made several attempts to stress to the Defendant's counsel his feelings and emotions as a result of the Defendant's violating his privacy rights.

110. The Plaintiff points out the Catch-22: while the Defendant's counsel mentioned an "opt-out" option, the Plaintiff couldn't exercise that option because the text message containing his personal information, and debt validation notice was sent to the wrong number, meaning he never received it.

111. The Plaintiff reiterates that the Defendant's counsel's argument about opting out is irrelevant because he never gave prior consent to the Defendant to receive text messages in the first place.

112. The Plaintiff points out a contradiction: while the Defendant's legal counsel maintained that her client acted properly, the collection account was ultimately deleted from the Plaintiff's credit reports. He emphasizes that, under the Fair Credit Reporting Act (FCRA), an *accurate* account cannot be deleted from a credit report. This suggests that the Defendant's actions may have been improper, as deleting the account implies it was likely inaccurate or improperly reported.

113. The Plaintiff argues that the deletion of the collection account from his credit report does not negate the fact that a violation of the FDCPA or FCRA may have occurred. He uses the analogy of a bank robber returning stolen money; this action doesn't erase the crime or its consequences. Similarly, deleting the inaccurate or improperly reported debt doesn't absolve the Defendant of potential liability for their actions.

114. Defendant's counsel then informed the Plaintiff via email that since the collection was [d]eleted, that there was no cause of action for him to pursue. However, this information was misleading, as credit reporting and debt collecting are totally separate.

115. Credit reporting and debt collection are distinct processes, although they are often intertwined. Deleting an item from a credit report *does not* automatically extinguish the debt. It simply means the information is no longer being reported to the credit bureaus. The debt itself, 'if valid', the Defendant could in fact, continue its efforts to collect such alleged debt.

116. The fact that the collection was deleted suggests that the Defendant may have had trouble verifying the debt as required by the FDCPA. This should also prove the Defendant's inability to verify the collection and improper credit reporting on Plaintiff's credit report by the Defendant.

117. The Plaintiff asserts that at no point during his communications with the Defendant's legal counsel did she provide him with the "Validation of Debt; Notice of Debt Contents," nor did they even offer to provide such a notice from their client. Instead, the Plaintiff claims the legal counsel focused solely on justifying the Defendant's actions.

118. The Plaintiff argues that although the collection by the Defendant was deleted upon his dispute to the consumer reporting agencies. Based on communications from the Defendant's counsel, the Defendant's conduct does *not* qualify as a bona fide error under FDCPA Section 813(c). The Defendant knowingly and willfully attempted to collect the alleged debt and also improper reporting of such alleged debt.

*"Section 813(c)*- a debt collector is *not* liable for violating the FDCPA if the violation was unintentional and resulted from a *bona fide error,* notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

119. From the time the Defendant's counsel first received the Plaintiff's direct dispute, on or around the 5th or 6th of March 2024 until the last email dated 12 April 2024. The Defendant's counsel also failed to provide Plaintiff with the debt validation notice. Instead, the counsel continued to defend her client's wrongdoings.

120. The Defendant, as well as the Defendant's attorney are bound to comply with the FDCPA procedures. Being that the Defendant's counsel also failed to comply with the FDCPA procedures, this is not a one-time oversight, but a pattern of inaction and negligence.

121. The Plaintiff is demonstrating a systemic problem. It's not just a mistake by one individual; it suggests a lack of proper training, procedures, or oversight within the Defendant's organization and their legal representation.

122. The Plaintiff argues that "if" FDCPA or FCRA violations cannot be used to protect consumers, then the FDCPA and FCRA are rendered useless. He contends that allowing abusive debt collectors to operate with impunity would negate the purpose of the FDCPA. He suggests that such a scenario would imply a failure on the part of Congress and the legal system to protect

consumers like himself, leaving them without recourse against abusive debt collection practices.

123. Plaintiff clearly stated throughout his communication with the Defendant's legal counsel that he did NOT receive the Validation Notice REQUIRED by all debt collectors. The appropriate action of the legal counsel would have been to provide the Plaintiff with the Validation of Debt Notice and verification of any portion of the debt their client was attempting to collect and also reporting on Plaintiff's credit reports.

124. The Plaintiff asserts that he should be considered a "least-sophisticated consumer" for the purposes of this case. This standard, used in FDCPA cases, recognizes that consumers are not expected to have expert knowledge of debt collection practices. It evaluates debt collection actions from the perspective of someone with limited understanding of the law and business practices.

125. The FDCPA, as well as South Carolina Consumer Protection Code (SCCPC) Title 37 et seq, both prohibit debt collectors from using certain types of abusive, deceptive, and misleading debt collection tactics.

126. Defendant's noncompliance of the FDCPA denied the Plaintiff's right to be aware of the notice of debt contents, to include the right to dispute the alleged debt, or any portion thereof.

127. To date, Defendant has never provided Plaintiff with any information related to the alleged debt it attempted to collect and report on his credit reports, as required under the FDCPA.

128. On or around 15 May of 2024, the Plaintiff received written notice from the Defendant that they were terminating collection efforts on the alleged debt. However, he reiterates that he never received the debt validation notice or notice of debt contents of the debt being terminated, as required by law.

## COUNT ONE

### WILLFUL VIOLATIONS OF THE FDCPA

129. Plaintiff incorporates by reference paragraphs 1-128 of this Complaint as though fully stated herein.

130. As a result of each and every violation of the FDCPA and SCCPC 37 Chapter 5, Plaintiff is entitled to actual damages pursuant; statutory damages under 1692k(a)(2)(A) which is incorporated by SCCPC 37-5-108(8); statutory damages for a knowing or willful violation in the amount of up to $1,000.00 pursuant to SCCPC 37-5-108(8)).

131. The Defendant failed to comply with the FDCPA Section 805(c) by communicating in connection with a debt with an unauthorized party upon sending debt validation notice to a number not assigned or used by Plaintiff.

132. The Defendant violated Section 807(2) of the FDCPA by using false, misleading, or deceptive means upon the collection of a debt. The Defendant failed to provide its "legal status" of an alleged debt owed by the Plaintiff when it failed to provide debt

validation to verify its legal status pertaining to the collection of such alleged debt, to the Plaintiff.

133. The Defendant violated Section 807(8) when it communicated credit information to TWO consumer reporting agencies, which it should have known to be false until properly verified.

134. The Defendant has violated Section 807(10) when it used deceptive means to collect an alleged debt.

135. The Defendant has violated Section 807(11) when it failed to provide "proper" initial communication to the Plaintiff, and in the initial communication that it is an attempt to collect a debt.

136. The Defendant has violated Section 808(1) when it used unfair and unconscionable means to collect a debt when it sent debt validation notices to the improper address and telephone number, and considered it as providing the Plaintiff with required debt validation notice.

137. The Defendant has violated Section 809(a) (1-5) when it failed to provide to the Plaintiff, the following:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion

thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such 15 USC 1692g 12 § 809 15 USC 1692g verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

138. The Defendant violated 12 CFR 1006.6, which is Code of Federal Regulation version of the FDCPA, by sending a text message indirectly to the Plaintiff without the consent of the Plaintiff.

139. The Defendant has violated Section 809(b) when it prevented the Plaintiff from exercising his rights to dispute the alleged debt upon receiving debt validation notice, which was not provided to him.

140. As a result of each and every violation of the FDCPA, Plaintiff is entitled to statutory damages for up to $1,000 for knowingly and willful violations. Plaintiff prays the court and jury to consider his distress and frustration, cost to file this complaint, entitling him to an award of actual damages in amounts to prove at trial.

## COUNT TWO

## WILLFUL AND NEGLIGENT VIOLATIONS OF THE FCRA

141.  Plaintiff re-alleges paragraphs 1-128 above, as if fully set forth therein.

142.  Plaintiff asserts that any violation of the FCRA by the Defendant, results in the Plaintiff being entitled to statutory damages up to $1,000 for each and every violation.

143.  The Defendant violated the FCRA when it caused damages to the Plaintiff's creditworthiness, credit capacity, credit standing, and reputation by failing to comply with Section 623(a)(1)(A) of the FCRA. The Defendant had a duty to verify its own information prior to furnishing any such information to a consumer reporting agency.

144.  Plaintiff directs the attention to the fact of Count One involving TWO separate consumer reporting agencies and requests to be awarded damages for violations concerning TWO separate agencies.

145.  The Defendant, Credence Resource Management, LLC has violated Section 604-Permissible Purpose by "negligently" failing to verify the collection information provided by AT&T (Non-Party) prior to "furnishing" the invalid collection on Plaintiff's Experian and TransUnion reports. Therefore, the Defendant had "impermissible purpose" until the confirmation of the debt, the correct consumer, to include "proper identification and contact info".

146.  The Defendant, Credence Resource Management, LLC, violated the FCRA by furnishing information which should have known

or reasons to believe was inaccurate. Although Plaintiff has no private right of action under Section 623(a), the Defendant did in fact violate Section 623(a)(1)(A) in lieu of failing to establish proper permissible purpose.

147. Defendant erroneously and unfairly placed a negative item on the Plaintiff's Experian and TransUnion credit reports, without due cause.

148. As a result of the conduct, actions and inactions of the Defendant. The Plaintiff suffered actual damages including without limitation:loss of credit,damage to reputation, embarrassment, humiliation and other mental and emotional distress.

149. The conduct, actions and inactions by the Defendant were willful, rendering the Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

150. In the alternative, the Defendant was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

151. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees (if applicable) from Defendant on TWO separate consumer reports, in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT THREE

## WILLFUL VIOLATIONS OF THE TCPA

152. Plaintiff re-alleges paragraphs 1-128 above, as if fully set forth therein.

153. The Defendant did willfully violate 47 U.S.C. § 227 (TCPA) by sending an indirect text to Plaintiff, containing the Plaintiff's personal information.

154. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees (if applicable) from Defendant, in an amount to be determined by the Court pursuant to 47 U.S.C. § 227(b)(3).

## COUNT FOUR

## VIOLATION OF SOUTH CAROLINA
## DEBT COLLECTION CONSUMER PROTECTION CODES

155. Plaintiff re-alleges paragraphs 1-128 above, as if fully set forth therein.

156. Any violation of the FDCPA is a violation of South Carolina Consumer Protection Codes (SCCPC) 37-5-108

157. The Defendant violated SCCPC 37-5-108 when it violated the FDCPA Sections 805(b), 807(2)(8)(10)and (11); 808(1); 809 (a)(1-5) and (b).

158. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees (if applicable) from Defendant, in an amount to be determined by the Court pursuant to SCCPC 37-5-108(b).

## COUNT FIVE

### VIOLATION OF SOUTH CAROLINA CREDIT REPORTING CONSUMER PROTECTION CODE 37, Ch. 5

159. Plaintiff re-alleges paragraphs 1-128 above, as if fully set forth therein. Any violation of the FCRA, is a violation of SCCPC 37 Chapter 20.

160. For knowing and willful noncompliance by the Defendant, and as a result of each and every violation of SCCPC 37-20-170(D). Plaintiff is entitled to $3,000 per violation, or three times the amount of actual damages; In addition and according to 37-20-170(E), for the Defendant's negligence, the Plaintiff is also entitled to $1,000 per violation.

### JURY DEMAND

161. **Plaintiff hereby demands a trial of this action by jury.**

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Jermaine Billie, respectfully prays this judgment be entered:

    a. Actual damages in an amount to be proved at trial.

    b. Statutory damages against Defendant, pursuant to 15 U. S. Code § 1692k; and

    c. Statutory damages as provided for by the TCPA (47 U.S.C. § 227 *et seq.*); and

    d. Statutory damages as provided for by SCCPC Title 37

    e. Punitive damages as fit by jury ; and

    f. The costs of this action and attorney fees (if applicable) awarded against Defendant to 15 U. S. Code § 1692k; 15 U.S.C. § 1681o and p; 47 U.S.C. § 227; and SCCPC Title 37; and

    g. Awarding prejudgment interest and post-judgement interest to Plaintiff's, all together with; and

    h. Such other and further relief that the Court determines is just and proper.

DATED this _14th_ day of _Feb_ , 20_25_. Respectfully Submitted,

Jermaine Billie *Pro Se*

COPY of the Lawsuit sent this _14th_ day of _Feb_ , 20 _25_.
to:

Corporation Service Company

508 Meeting Street

West Columbia, SC 29169