# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Jermaine Billie, | Case No. 2:25-cv-00861-BHH-MGB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Credence Resource Management, LLC, | |
| Defendant. | |

Plaintiff Jermaine Billie ("Plaintiff"), proceeding *pro se*, brings this civil action against Defendant Credence Resource Management, LLC ("Defendant") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), Fair Credit Reporting Act ("FCRA"), Telephone Consumer Protection Act ("TCPA"), and South Carolina state law. (Dkt. No 1.) This matter is now before the Court upon Defendant's Motion to Dismiss (Dkt. No. 22). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration. For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss (Dkt. No. 22) should be **GRANTED**, and that Plaintiff's case should be **DISMISSED IN FULL**.

## BACKGROUND

According to the Complaint, on or around February 17, 2024, Plaintiff "received a credit alert from several credit monitoring companies, including MyFICO.com, informing him that his FICO scores dropped 77 points on his Experian FICO score and 78 [on] TransUnion reports." (Dkt. No. 1 at 13.) Plaintiff claims that the "reason for his scores dropping" was a "'new' collection [] added to his credit reports for the amount of $317.00." (*Id.*) "Plaintiff initially believed the

1

collection activity might be related to a pending insurance claim with the Veterans Affairs (VA) for a recent hospital visit," but later "discovered the collection was actually for an alleged unpaid bill from AT&T U-VERSE." (*Id*.)

Plaintiff claims that, after receiving this alert, he confirmed that his AT&T account was active and in good standing. (*Id*. at 14.) Upon doing so, he "realized he had never received any notification from either Defendant or AT&T regarding the alleged unpaid debt." (*Id*.) Plaintiff appears to admit that he had "sub-accounts" under his AT&T contract which became delinquent but claims that AT&T and Defendant implemented unfair debt collection practices by failing to notify him of his purported delinquencies within the sub-account(s) prior to placing the account(s) "into collections." (*Id*. at 14–18.) Specific to Defendant, Plaintiff claims that Defendant "failed to ensure the accuracy of the debt that it was attempting to collect." (*Id*.)

According to the Complaint, Plaintiff "disputed the debt through the Defendant's Registered Agent in the State of South Carolina" on or around February 29, 2024. (*Id*. at 18.) Plaintiff claims that he received a response from Defendant's attorney on March 22, 2024, which served "as confirmation that the Defendant [] was aware of the Plaintiff's dispute concerning debt collection activities and the alleged inaccurate reporting of this debt to credit bureaus." (*Id*.) Plaintiff claims that the response "did not contain [a] debt validation notice, as required under the FDCPA" and did not "notify Plaintiff of his rights" in violation of the FDCPA. (*Id*. at 19.)

Plaintiff claims that he emailed Defendant's attorney again on March 28, 2024 "to express his disagreement with the 14-day timeframe for investigation." (*Id*.) Plaintiff alleges that this email "served as an attempt by the Plaintiff to resolve the issue through Defendant's legal counsel." (*Id*. at 20.) Plaintiff claims his email "outlined the alleged violations, including incorrect reporting to credit bureaus, invasion of privacy, damage to his credit reputation, and violations of the FDCPA

2

and FCRA," and "proposed a settlement amount to compensate for these violations." (*Id*.) Plaintiff claims he received a response from Defendant's legal counsel on March 29, 2024, in which counsel "address[ed] each issue submitted by Plaintiff" and told him that Defendant "was not at fault and had not violated any laws." (*Id*.)

Plaintiff claims that "Defendant, as a furnisher of information under the FCRA[,] [h]ad a duty to notify the consumer reporting agencies of [the] dispute received by [] Plaintiff," but "did not notify the consumer reporting agency, nor was his credit report updated to 'consumer disputes.'" (*Id*. at 21.) At the same time, Plaintiff alleges that his "consumer report was 'updated' upon the consumer reporting agencies receiving notice of dispute," and that "the subject collection was inaccurate/unverifiable and deleted." (*Id*.)

Confusingly, Plaintiff also claims that Defendant was not required to furnish information to credit reporting agencies as a debt collector under the FDCPA. (*Id*. at 22.) Thus, Plaintiff claims that "Defendant's action of placing the collection on two of his credit reports should be considered as 'malicious' and designed to harm his credit capacity, creditworthiness, credit standing, and reputation," since Defendant reported this information on his credit reports, even though it was not required to do so. (*Id*.)

In addition, Plaintiff seems to allege that he did not receive a debt validation notice from Defendant, and that Defendant did not follow proper procedure after receiving an "undeliverable" notice from the United States Postal Service indicating that Plaintiff had not received the debt validation notice Defendant mailed to him. (*Id*. at 22–23.) More specifically, Plaintiff claims that Defendant's receipt of the "undeliverable" notice should have "triggered the Defendant to utilize its 'permissible purpose' to review Plaintiff's credit report for a recent address" and "[d]ependent on the 'Assignment Agreement' between the Defendant and AT&T," should have prompted

3

Defendant "to return the debt to AT&T as uncollectible." (*Id*. at 23.) Thus, Plaintiff claims that "furnishing [the collection] information to any consumer reporting agency [was] a violation of the Plaintiff's rights under the FCRA" and "Defendant failed to have reasonable procedures in place to ensure accurate personal information . . . ." (*Id*. at 23–24.)

According to the Complaint, "[t]he returned, undelivered debt validation notice supports the Plaintiff's claim that he was not properly notified of the alleged debt" and "[t]his lack of notification also suggests a failure to provide him with the legally required information regarding his right to dispute the debt's validity." (*Id*. at 24.) Plaintiff alleges that "debt validation is essential to establish the 'validity' of a debt," and he did not have an opportunity to verify or oppose his debt because he never received the debt validation notice Defendant sent him (*Id*. at 24–25.)

Plaintiff further claims that "reporting the debt before the 30-day dispute window close[d] could be a violation of the FDCPA as well as the FCRA." (*Id*.) On this point, Plaintiff claims that he did not receive a debt validation notice that Defendant allegedly sent to him via text message after attempting to notify him by mail. (*Id*. at 29–30.) Plaintiff claims that the text was supposedly sent on January 25, 2024, but Defendant reported Plaintiff's collection account to Experian and TransUnion on February 17, 2024, "which was only 23 days after allegedly sending the text message to [an] improper telephone number." (*Id*. at 30.) Regardless, Plaintiff claims that he disputed his debt within the 30-day window, so Defendant "ha[d] a duty to provide both debt validation notice, as well [as] 'verification of debt,'" which he did not receive. (*Id*. at 30, 34.)

Plaintiff next takes issue with Defendant's ability to furnish information to credit reporting agencies without Plaintiff's express consent. (*Id*. at 27.) According to Plaintiff, "all other accounts on his credit reports originated from agreements with creditors where the 'terms and conditions' explicitly' stated that information would be furnished to credit reporting agencies" and that "he

4

agreed to this reporting by signing the agreements." (*Id*.) As such, Plaintiff claims that Defendant, as a debt collector, should not have furnished his information to credit reporting agencies without first notifying him. (*Id*.)

Plaintiff also claims that "Defendant, by providing information about the alleged debt to credit reporting agencies," qualifies as a "furnisher" under the FCRA. (*Id*. at 27–28.) As such, Plaintiff claims that Defendant violated Section 623(a)(7)(A) by failing to provide him written notice before furnishing negative information about his credit to a credit reporting agency. (*Id*. at 28.) Plaintiff further alleges that Section 604 of the FCRA "only authorizes consumer reporting agencies to furnish a consumer report to entities with a permissible purpose" and seems to claim that Defendant, as a debt collector, therefore could not properly "report collection account information to consumer reporting agencies." (*Id*. at 29.) In addition, Plaintiff claims that "Defendant violated Section 805(b) of the FDCPA by communicating about the debt with a party not authorized under that section when the Defendant . . . sen[t] the debt validation notice to a number not assigned or used by [] Plaintiff" and "emphasizes" that he did not give Defendant his consent to send him "any text or email." (*Id.* at 31.) Plaintiff claims Defendant "providing his personal information via text message to a phone number not assigned to him" constitutes a violation of the TCPA. (*Id*.)

According to Plaintiff, "the collection account was ultimately deleted from Plaintiff's credit reports," indicating that Defendant's "actions may have been improper" because "an *accurate* account cannot be deleted from a credit report. (*Id*. at 33) (emphasis in original). Plaintiff further claims that "the deletion of the collection account from his credit report does not negate the fact that a violation of the FDCPA or FCRA may have occurred" and that "deleting the inaccurate or improperly reported debt doesn't absolve the Defendant of potential liability for their

5

actions." (*Id.*) Plaintiff alleges that Defendant's purportedly improper actions were knowing and willful, and that Defendant's failure to comply with FDCPA procedures implicate a pattern of inaction and negligence. (*Id.* at 34–35.) Plaintiff further notes that "[t]o date, Defendant has never provided Plaintiff with any information related to the alleged debt it attempted to collect and report on his credit reports, as required under the FDCPA." (*Id.* at 36.) Nonetheless, "[o]n or around [May 15, 2024], [] Plaintiff received written notice from the Defendant that they were terminating collection efforts on the alleged debt." (*Id.* at 37.)

Based on the foregoing, Plaintiff brings causes of action for: (1) willful violations of the FDCPA; (2) willful and negligent violations of the FCRA; (3) willful violations of the TCPA; and (4) violations of the South Carolina Consumer Protection Code ("SCCPC"). (*Id.* at 37–43.) Plaintiff claims he suffered damages in the form of "distress and frustration," the "cost to file this complaint," "damages to [his] creditworthiness, credit capacity, credit standing, and reputation," "loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress." (*Id.*) He therefore requests an award of actual damages, statutory damages, and the costs incurred in pursuing the instant litigation. (*Id.*)[1]

---

[1] In his Complaint, Plaintiff states that he "is willing to be the face of a []class action lawsuit . . . ." (Dkt. No. 1 a 7–8.) At the outset, the undersigned notes that Plaintiff is not permitted to bring any of the claims outlined in his Complaint on behalf of other persons as a *pro se* litigant. Indeed, 28 U.S.C. § 1654 provides that: "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." While the statute allows individuals to "plead and conduct their own cases personally," the statute does not extend the right of self-representation to directing litigation on behalf of others. *See Myers v. Loudon Co. Pub. Sch.*, 418 F.3d 395, 401 (4th Cir. 2005) ("The right to litigate for oneself, however, does not create a coordinate right to litigate for others."). Further, Rule 11(a) of the Federal Rules of Civil Procedure requires that "[e]very pleading . . . must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11. Thus, Plaintiff may not bring his claims here as "the face of a []class action lawsuit." *See Hummer v. Dalton*, 657 F.2d 621, 623–626 (4th Cir. 1981) (a *pro se* plaintiff's lawsuit is "confined to redress for violation of his own personal rights"); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (a *pro se* plaintiff may not represent others in a class action); *Neal v. ORS*, Case No. 6:12-cv-1995-TMC-KFM, 2012 WL 3765175, *2 (D.S.C. July 26, 2012) (explaining that a *pro se* plaintiff "lacks standing to litigate other persons' legal rights" and that "this court is not permitted to certify a class action where a *pro se* litigant will act as the representative of that class"), *adopted*, 2012 WL 3639721 (D.S.C., Aug. 23, 2012), *aff'd*, 509 F. App'x 280 (4th Cir.), *cert. denied*, 571 U.S. 942 (2013).

# LEGAL STANDARDS

## I. Liberal Construction of *Pro Se* Complaint

Because Plaintiff is proceeding *pro se*, this Court is required to liberally construe his filings, which are held to a less stringent standard than those drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). Further, a court may not construct Plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Motion to Dismiss

Defendant argues that Plaintiff's claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(1) asks whether a court has the ability to hear and adjudicate the claims brought before it. Federal courts are courts of limited jurisdiction and can act only in those specific instances authorized by Congress. *See Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968). The plaintiff bears the burden of proving the existence of subject matter jurisdiction. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). Further, when considering a motion to dismiss under Rule 12(b)(1), "the court may consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning jurisdiction." *Williams*, 50 F.3d at 304 (citing 2A James W. Moore, Moore's Federal Practice ¶ 12.07 at 12–49–

12–50 (2d ed. 1994)); *see also Evans*, 166 F.3d at 647 ("When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'") (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

Under Rule 12(b)(6), a party may move to dismiss an action when a complaint fails "to state a claim upon which relief can be granted." Because a Rule 12(b)(6) motion tests only the "legal sufficiency" of the complaint, a court's analysis is limited to determining whether the complaint satisfies the minimal pleading standard under Rule 8. *See Doe 202a v. Cannon*, No. 2:16-cv-00530-RMG, 2018 WL 317818, at *1 (D.S.C. Jan. 8, 2018). Specifically, Rule 8(a)(2) states that the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Although Rule 8 does not require "detailed factual allegations" to survive a motion to dismiss, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of satisfying the federal pleading standard. *See id.* (referencing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, the complaint must contain sufficient factual matter to state a claim to relief that is "plausible on its face," such that the allegations allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id.* (referencing *Twombly*, 550 U.S. at 556). Thus, while a court must take all factual allegations in a complaint as true in reviewing a Rule 12(b)(6) motion to dismiss, it "need not assume the veracity of bare legal conclusions." *See Balas v. Reveley*, 734 F. App'x 201, 202 (4th Cir. 2018) (referencing *Burnette*

*v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012)); *Twombly*, 550 U.S. at 555 (explaining that the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

## DISCUSSION

As noted above, Defendant asserts that Plaintiff's claims should be dismissed based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See generally* Dkt. No. 22-1.) For the reasons set forth below, the undersigned agrees with Defendant and therefore **RECOMMENDS** that Defendant's Motion to Dismiss (Dkt. No. 22) should be **GRANTED** in full.

### I. Article III Standing[2]

Article III of the United States Constitution limits a federal court's jurisdiction to cases and controversies. U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal quotation marks and citation omitted).

When considering the threshold requirement of standing, the Court must determine whether Plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)); *see also Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 921 (4th Cir. 2022) ("Because standing is a threshold jurisdictional question, we address it first." (cleaned up)). "[A]ll three elements are necessary prerequisites to establish standing," and the burden of establishing

---

[2] Because Plaintiff lacks standing to bring his consumer credit claims, the Court cannot consider the merits of these claims. *See Ali v. Hogan*, 26 F.4th 587, 600 (4th Cir. 2022) (noting a court that lacks jurisdiction "has no power to adjudicate and dispose of a claim on the merits"). Nonetheless, it is worth noting that certain of these claims are likely subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See generally* Dkt. No. 1.) For example, Plaintiff appears to allege that Defendant violated 15 U.S.C. § 1681s–2(a); however, Plaintiff cannot sustain an FCRA claim on this basis because the FCRA explicitly bars private suits for violations of § 1681s–2(a). *See Saunders v. Branch Banking And Tr. Co. Of VA*, 526 F.3d 142, 149 (4th Cir. 2008) ("[The] FCRA explicitly bars private suits for violations of § 1681s–2(a).").

each element falls on Plaintiff as "the party invoking federal jurisdiction." *Id*. Relevant to the first element, an injury in fact is not required to be tangible, but a litigant cannot "'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement.'" *Dreher*, 856 F.3d at 343–44 (citing *Spokeo*, 578 U.S. at 341). In other words, a plaintiff's injury must be sufficiently "concrete and particularized." *Spokeo*, 578 U.S. at 339 (citation omitted). For an injury to be "concrete," the "injury must be 'de facto'; that is, it must actually exist." *Id*. at 340 (citation omitted).

Defendant argues that Plaintiff lacks standing to bring his claims under the FDCPA and FCRA because he fails to allege a concrete and particularized harm. (Dkt. No. 22-1 at 3–7.) More specifically, Defendant asserts that "Plaintiff fail[s] to identify any harm caused by his reduced credit score," "fails to allege that his credit report was distributed to any prospective or current creditor, that he failed to receive credit, or received less favorable credit terms as a result of his reduced credit score," and "completely fails to allege what type of emotional distress he suffered or how he was affected" by Defendant's alleged actions. (*Id*. at 6.) Upon careful review, the undersigned agrees.

As noted, Plaintiff claims he was harmed by Defendant's purported FCRA and FDCPA violations because his credit score dropped 77 to 78 points, which caused him "distress and frustration . . . loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress," and damaged his "creditworthiness, credit capacity, credit standing, and reputation." (Dkt. No. 1 at 13, 37–43.) However, even taking these allegations as true and construing them in the light most favorable to Plaintiff (as the Court must at this early stage), Plaintiff's allegations are insufficient to establish a concrete injury.

"Before the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), 'a decrease in credit score [could] establish an injury in fact sufficient to confer standing[]' when plausible." *Evans v. Am. Collection Enter.*, 624 F. Supp. 3d 593, 599 (D. Md. 2022) (quoting *Green v. RentGrow, Inc.*, Civ. No. 16-0421, 2016 WL 7018564, at *8 (E.D. Va. Nov. 10, 2016)). After *TransUnion*, however, Plaintiff must show that his reduced credit score was disseminated to a third party, or otherwise specifically allege how the reduced credit score detrimentally affected him. *Id*. at 601 ("[A]bsent allegations that the score was disseminated to a third party, or specific allegations describing how the score detrimentally affected his ability to participate in the marketplace, an artificially reduced credit score alone does not constitute a concrete injury after *TransUnion*."); *TransUnion LLC*, 594 U.S. at 414–15 ("The mere existence of inaccurate information, absent dissemination, traditionally has not provided the basis for a lawsuit in American courts. The plaintiffs cannot demonstrate that the misleading information in the internal credit files itself constitutes a concrete harm."); *see also Zlotnick v. Equifax Inf. Servs.*, 583 F. Supp. 3d 387, 391, Civ. No. 21-7089 (E.D.N.Y. Feb. 3, 2022) (rejecting proposition that lowered credit score alone can constitute cognizable injury where plaintiff failed "to allege any particularized injury or actual dissemination to third-party creditors").

Here, Plaintiff has not alleged that his credit report was provided to third-party creditors, or any other facts from which the Court could reasonably infer that his reduced credit score was published to a third party such that the purported reduction caused a concrete harm. (*See generally* Dkt. No. 1); *see also TransUnion LLC*, 594 U.S. at 434 (explaining that the mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm for purposes of Article III standing). What is more, Plaintiff does not allege that he declined to pursue a specific opportunity in the credit market or that he would have received less favorable

credit terms because of his reduced credit score. (*See generally* Dkt. No. 1.) Without these allegations, Plaintiff's claims of hypothetical "credit damage" are just the type of "bare procedural violation, divorced from any concrete harm," that the Fourth Circuit has previously rejected. *See Dreher*, 856 F.3d at 343 (finding that plaintiff "suffered no real harm, let alone the harm Congress sought to prevent in enacting the FCRA" where he claimed he was denied "specific information to which [he] w[as] entitled under the FCRA"); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 784 (D. Md. 2022) (dismissing plaintiff's FDCPA claims for lack of standing where she "failed to show how she was affected to her detriment as a result of the alleged invasion of her statutorily protected rights").

Further, Plaintiff's remaining allegations of frustration and emotional distress are insufficient to establish a concrete harm in this instance. (*See generally* Dkt. No. 1.) More specifically, Plaintiff's allegations of frustration and emotional harm constitute the type of "mere conclusory statements" that do not suffice under the Federal Rules of Civil Procedure. *Iqbal*, 556 U.S. at 678 (noting that "mere conclusory [allegations], do not suffice"); *see also Maddox v. Bank of New York Mellon Trust Comp., N.A.*, 19 F.4th 58, 65 (2d Cir. 2021) (rejecting claims of emotional harm where, as here, plaintiffs failed to "plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." (quoting *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018))). Courts have routinely rejected allegations like Plaintiff's where the purported injury is "not rooted in any specific harm and [] presented in [] a cursory manner." *Dawkins v. Experian Info. Sols., Inc.*, No. 6:22-cv-00774-TMC-JDA, 2022 WL 17668425, at *4–5 (D.S.C. Oct. 19, 2022), *adopted*, 2022 WL 17351761 (D.S.C. Dec. 1, 2022); *see also Reimer v. LexisNexis Risk Sols., Inc.*, No. 3:22-cv-153-DJN, 2022 WL 4227231, at *8 (E.D. Va. Sept. 13, 2022) (finding that "mere boilerplate claims with no detail do

12

not suffice to satisfy the requirements for injury-in-fact" and summarizing cases finding no concrete harm when the plaintiffs made conclusory allegations regarding mental and emotional injuries). Indeed, the Fourth Circuit has found that emotional damages are recoverable only when a plaintiff provides some detail about the manner in which the distress manifested itself. *See Moore v. Blibaum & Assocs., P.A.*, 693 F. App'x 205, 206 (4th Cir. 2017) (satisfying Article III standing requirements, under the FDCPA, when plaintiff pled ongoing suffering from "emotional distress, anger, and frustration" as a result of demands of improper amounts of payment); *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 240 (4th Cir. 2009) (finding damages recoverable based on emotional distress when plaintiff "presented evidence that her mental distress manifested itself as headaches, sleeplessness, skin acne, upset stomach, and hair loss[,]" and friends and family testified about changes in appearance and demeanor and that she was often visibly upset due to the defendant's conduct).

By contrast, Plaintiff alleges only that Defendant purportedly violated the FCRA and FDCPA by failing to notify Plaintiff of the debt, failing to validate the debt, and subsequently reporting the debt on Plaintiff's credit report (which prompted Plaintiff to receive a notification that his credit score was lowered 77 to 78 points), before ultimately "terminating collection efforts." (*See generally* Dkt. No. 1.) Plaintiff does not provide any details about how the temporary deflation of his credit score—which, according to the Complaint, was not communicated to anyone but Plaintiff—imposed mental and/or emotional harm. (*See generally* Dkt. No. 1.) Plaintiff also does not "identify a single expense that [Plaintiff] incurred, a single dollar that he lost, or a single credit opportunity that he was denied," that might allow the Court to reasonably infer specific mental and/or emotional distress Plaintiff suffered as a result of Defendant's purported FCRA and

FDCPA violations. *Magruder v. Cap. One, Nat'l Ass'n*, 540 F. Supp. 3d 1, 8 (D.D.C. 2021) (citation omitted).

Based on the foregoing, the undersigned finds that Plaintiff lacks standing to bring his FCRA and FDCPA claims, and such claims must therefore be **DISMISSED**. Further, because Plaintiff's claims under the SCCPA are directly tied to his claims under the FCRA and FDCPA, those claims must also be dismissed for lack of standing. (*See* Dkt. No. 1 at 42–43); *see, e.g.*, *Stevens v. Nelnet Servicing, LLC*, No. 3:24-cv-0280, 2025 WL 1334071, at *5 (S.D.W. Va. May 7, 2025) (dismissing plaintiff's claims under the West Virginia Consumer Credit and Protection Act for lack of standing and noting analysis akin to cases in which standing was challenged for violations of FDCPA); *Bassett v. Credit Bureau Services, Inc.*, 60 F.4th 1132 (8th Cir. 2023) (finding the plaintiff lacked standing to pursue her claims under the FDCPA and the Nebraska Consumer Practices Act and relying upon *TransUnion* and *Spokeo* analyses in determining that plaintiff failed to allege injury in fact); *In re Williams*, No. 18-12940-BFK, 2023 WL 6618956, at *6 (Bankr. E.D. Va. Oct. 10, 2023) ("Under both *Spokeo* and *[TransUnion]*, the violation of a consumer protection statute alone, without consequent harm, cannot provide standing.").

However, because "[s]tanding is not dispensed in gross," the undersigned considers the merits of Plaintiff's remaining TCPA claim, below. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks and citation omitted).

## II. TCPA Claim

Congress enacted the TCPA in 1991 to "prevent abusive telephone marketing practices" as a "response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.'" *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 648–49 (4th Cir. 2019) (quoting Pub. L. No. 102-243, 105 Stat. 2394 (1991)). In his Complaint, Plaintiff alleges

that Defendant violated Section 227(b) of the TCPA by "sending an indirect text to Plaintiff, containing Plaintiff's personal information" and/or "by sending a text message containing his personal information[] to a number not assigned or used by him." (Dkt. No. 1 at 32, 42.)

Among other things, Section 227(b) of the TCPA makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any . . . cellular telephone service . . . or any service for which the called party is charged for the call[.]" 47 U.S.C. § 227(b)(1)(A)(iii). To state a claim under this portion of Section 227(b), Plaintiff must allege: (1) the defendant initiated a telephone call to a cellular phone number, (2) using an automatic telephone dialing system, and (3) without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); *Connor v. Priority Concepts, Inc.*, No. 2:23-cv-3726, 2024 WL 199138, at *2 (D.S.C. Jan. 18, 2024); *see also Nickson v. Advanced Mktg. & Processing, Inc.*, No. CV DLB-22-2203, 2023 WL 4932879, at *3 (D. Md. Aug. 2, 2023) (explaining that when, as here, the plaintiff does not allege use of an artificial or prerecorded voice, a plaintiff must allege that the defendant called the plaintiff's telephone using an automatic dialing system without the plaintiff's prior express consent).

In this instance, the Complaint fails to make any allegations that could be construed as pleading the second and third elements of a Section 227(b) claim. (*See generally* Dkt. No. 1.) In fact, the Complaint makes absolutely no mention of "an automatic telephone dialing system" and neglects to include any indication as to whether the actual recipient of the text message at issue gave Defendant "prior express consent." (*Id*.) Accordingly, the Complaint fails to allege a TCPA claim upon which relief may be granted and this claim must therefore be **DISMISSED**.

## CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss (Dkt. No. 22) should be **GRANTED**.

**IT IS SO RECOMMENDED.**

October 15, 2025
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).